Fidencio LOPEZ, Jesus Marines, Genaro Mungia, Simon Serrata, Ruben Sanchez, Mrs. Ernesto Montez, David T. Perez, Helio L. Perez, Maria E. Villela, Edward Garza, Carolina Flores, Jesse Martinez, Nardo Torres, Gregorio Sanchez, Roque Alvarez, Jesse Flores, Cosme Longoria, and A.H. Alvarado, Appellants,

v.

PUBLIC UTILITY COMMISSION OF TEXAS and City of Robstown, Appellee.

No. 3-90-178-CV.

Court of Appeals of Texas, Austin.

Aug. 28, 1991.

Rehearing Overruled Sept. 25, 1991.

Juan Perales, Robstown, for appellants.

Jim Mattox, Atty. Gen., Mary A. Keeney, Asst. Atty. Gen., Austin, for Pub. Utility Com'n. of Texas.

Thomas K. Anson, Hays & Anson, Austin, for City of Robstown.

Before POWERS, ABOUSSIE and KIDD, JJ.

POWERS, Justice.

The district court dismissed, for want of subject-matter jurisdiction, certain claims brought by the plaintiffs against the Public Utility Commission and the City of Robstown. The plaintiffs appeal. We will modify the judgment and affirm it as modified.

## THE CONTROVERSY

In 1989, the governing body of the City enacted an ordinance affecting the electric rates chargeable by the City's municipally owned utility. The plaintiffs challenge the resulting rates in the present lawsuit, which they filed after first initiating in the Commission a similar attack upon the rates.

### Plaintiffs' Appeal to the Commission

In the Public Utility Regulatory Act (PURA), Tex.Rev.Civ.Stat.Ann. art. 1446c § 26(c) (Supp.1991), the Legislature provided that the customers of a municipally owned electric utility, who live outside the municipal limits, may appeal to the Commission from an act of the City's governing body affecting the rates of the utility. The Commission may then determine, in a proceeding de novo, the rates the City "should have fixed in the ordinance from which the appeal was taken," and then set such rates by the Commission's own order. PURA § 26(g).

A party in such a case initiates an appeal by filing in the Commission a "petition for review signed by the lesser of 10,000 or 5 percent of the ratepayers served by such utility outside the municipal limits." PURA § 26(c). The statute provides further that: (1) each person receiving a separate bill from the utility shall be considered a "ratepayer," but "no person shall be considered as being more than one ratepayer" even though he receives more than one bill; and (2) the "petition for review shall be considered properly signed if signed by any person, or spouse of any such person, in whose name residential utility service is carried." *Id.*

Following enactment of the City ordinance, the plaintiffs filed in the Commission a petition for review under the terms of PURA § 26(c), alleging they were ratepayers served by the City's electric utility outside the municipal limits.

### The Commission Rules

The Commission has adopted procedural rules augmenting the provisions of PURA § 26(c). The Commission's Rule 21.61 classifies the pleadings possible to be filed in an agency proceeding, according to whether the cause comes within its "original" or "appellate" jurisdiction. The latter refers to the Commission's power to review a city's rate ordinances. 16 Tex.Admin.Code § 21.61 (1988).[1]

Rule 21.62 specifies the requisite form and content of such pleadings. For example, Rule 21.62(g) prescribes the form and content of petitions filed by ratepayers receiving service outside the city limits. If they wish to appeal to the Commission under PURA § 26(c), their petition must: (1) state clearly and concisely the rate action, by the city's governing body, from which the appeal is taken; (2) designate an individual, group, or organization to serve as the petitioners' designated "attorney in fact" in the course of the appeal and contested case, and in any proceeding in a court of law; (3) list each signatory's name, telephone number, and address (other than a post-office box), and where electric service is received if different from such address; and, (4) state that the appeal is taken under PURA § 26(c) rather than under § 26(b), the latter being applicable to appeals taken to the Commission by citizens within a municipality. Rule 21.-62(g)(1)–(3).

Rule 21.62(g)(5) declares that a page of the petition is invalid if it omits any of the required information or the information is not reasonably subject to verification; "however, if the omitted or illegible material consists only of the name, telephone number, or address of a signatory, only such signatures are to be deemed invalid"

---

1. We shall refer hereafter to the Commission's rules without further citation to the Texas Administrative Code. The rule numbers correspond to the section numbers in the Code.

and any "remaining signatures on that page shall be accepted." Rule 21.62(g)(5) concludes with the statement that "[a]ny disputes over the informational sufficiency or legibility of a petition shall be resolved by" interim order of the presiding hearings examiner.

Rule 21.65 of the procedural rules provides that pleadings shall be accepted "conditionally" for filing, even though they may be insufficient under the rules. Subsequent provisions in Rule 21.65 delineate a procedure for the cure of any material pleading deficiencies and a corresponding extension of filing deadlines.

Rule 21.65(c) establishes a procedure for the verification of petitions in appeals taken to the Commission, under PURA §§ 26(b) or (c), from the rate actions of the governing bodies of municipalities. The procedure consists of allowing the municipality a period of time within which to verify the status of the signatories and to object to the authenticity of any signatures, any objection being resolved by the presiding hearings examiner after notice and hearing as authorized in § 21.62(g)(5).

*The Commission's Dismissal of Plaintiffs' Petition*

In the present case, the City initially filed a motion requesting that the Commission dismiss the plaintiffs' petition on the ground that it was not timely filed in the agency.[2] After the Commission overruled the motion, the City commenced the verification process authorized in Rule 21.65(c). In the process, the City allegedly persuaded several individuals to notify the Commission that they withdrew their signatures because they did not wish to pursue the appeal. The City thereafter objected to the plaintiffs' petition on two grounds contemplated in Rule 21.62(g): (1) the petition did not state clearly and concisely the rate action challenged by the plaintiffs; and (2) the petition was not signed by 28 individuals, the minimum number required to bring an appeal under PURA § 26(c).

The Commission's examiner issued an order requesting additional factual information relating to the City's verification of signatures, and gave the plaintiffs and the Commission an opportunity to respond. Neither did so. The examiner then convened a hearing to obtain such factual information and to receive evidence regarding the merits of the appeal. In connection with this hearing, the plaintiffs neither adduced evidence nor offered a brief in support of their position in the case, either as to the merits or as to any irregularities in the verification process.

In a post-hearing report to the Commission, the examiner recommended that the petition be dismissed (1) for lack of jurisdiction in the Commission, there being only 12 valid signatures instead of the minimum number of 28 required by PURA § 26(c); and (2) for lack of a petition that stated clearly and concisely the action, taken by the governing body of the City, from which the appeal was prosecuted. The examiner recommended alternatively that if the Commission determined it had jurisdiction over the controversy, then it should prohibit the utility's recovering through its rates certain expenditures contemplated by the City ordinance, these being impermissible items of recovery under the ratemaking provisions of PURA. The report recommended certain findings of fact and conclusions of

---

**2.** We take our description of the agency proceeding from the hearing examiner's proposal for decision and the Commission's final order. They were not introduced in evidence at the district-court hearing on the pleas to the jurisdiction filed by the City and the Commission. Instead, they were apparently attached to the plaintiffs' original petition in that court, which took "judicial notice" of them with the plaintiffs' agreement. The two documents do not appear, however, as attachments to the copy of the original petition contained in our transcript. Copies of these are contained in an appendix to the Commission's brief. The Commission included copies of them in an appendix to its brief.

There appears to be no dispute about the accuracy of the documents contained in the appendix to the Commission's brief. Indeed, the plaintiffs refer to the documents at great length, generally by ample quotations. In these circumstances, we believe we may utilize the documents for purposes of discussion, especially since the plaintiffs impliedly request that we do so and it appears advantageous to them that we do.

law in support of each alternative recommended by the examiner.

On January 24, 1990, the Commission issued its order dismissing the petition for want of jurisdiction and adopting the examiner's report in that respect. One Commissioner dissented on several grounds pertaining to the signature requirements of Rule 21.62(g).

### THE DISTRICT–COURT SUIT

On February 23, 1990, the plaintiffs filed the present cause in a district court of Travis County. Their original petition set up a statutory cause of action for judicial review of the Commission's order of dismissal, as authorized in PURA § 69 and as governed by the Texas Administrative Procedure and Texas Register Act (APTRA), Tex.Rev.Civ.Stat.Ann. art. 6252–13a § 19 (Supp.1991). In their first amended original petition, however, the plaintiffs abandoned that statutory cause of action and alleged other causes of action ostensibly within the original jurisdiction of the district court, determinable by a preponderance of the evidence as opposed to the substantial-evidence review contemplated in PURA § 69 and APTRA § 19.

Against the Commission, the plaintiffs prayed for declaratory relief, under APTRA § 12 and the Uniform Declaratory Judgments Act, Tex.Civ.Prac. & Rem.Code Ann. §§ 37.001–.011 (1986 and Supp.1991), that the Commission's dismissal of the plaintiff's petition was illegal and unconstitutional. The plaintiffs prayed also for temporary and permanent injunctions restraining the Commission from enforcing any of the rules, regulations, and policies that led to the dismissal of their petition. They may have prayed as well for money damages, attorney's fees, and costs, but this is not clear. These prayers for relief were based, apparently, on the following allegations set out in the body of the petition:

1. The Commission acted without authority in dismissing the petition because the requirements of Rule 21.-62(g) exceeded the requirements of PURA § 26(c).

2. The dismissal deprived the plaintiffs of rights, privileges, and immunities secured by the First and 14th Amendments to the Constitution of the United States, under color of law, as contemplated in 42 U.S.C.A. §§ 1983, 1985, 1988 (West 1981).

3. The Commission violated the terms of PURA § 26(c) "by approving, allowing and encouraging" the City's "scheme" to defeat the Commission's jurisdiction to review the rate ordinance.

4. The provisions of Rule 21.62(g) violated the explicit provisions of PURA § 26(c) and the due-process and equal-protection guarantees of the 14th Amendment.

Against the City, the plaintiffs prayed for a temporary injunction prohibiting the enforcement of the City ordinance, for $6,500,000 in damages, and for costs of suit, reasonable attorney's fees, and general relief. While the petition is not clear on the point, the plaintiffs may have meant these to be claims against the Commission as well as the City. We will assume that to be the case. In all events, the prayer for temporary injunction, damages, costs, attorney's fees, and general relief rests evidently on the following allegations in the body of the plaintiffs' petition:

1. The City's "scheme" to defeat the Commission's jurisdiction was illegal and violated the First and Fourteenth Amendments of the United States Constitution and unspecified provisions of PURA, under color of law, as contemplated in 42 U.S.C.A. §§ 1983, 1985, 1988 (West 1981).

2. The City willfully breached a covenant of good faith and fair dealing, causing the harm sustained by the plaintiffs.

3. The City intentionally misrepresented and concealed from the plaintiffs material facts pertaining to utility rates, upon which the plaintiffs relied to their harm.

4. The plaintiffs were entitled to a repeal of the ordinance, to an accounting, and to have placed in the registry of

the court any sums derived under the ordinance. (These were not included in the plaintiffs' prayer for relief and we assume their inclusion in the body of the petition was intended merely to augment the allegations in 1, 2, and 3.).

The City and the Commission interposed pleas to the jurisdiction. The City alleged that the plaintiffs' causes of action were prohibited under the "collateral attack" doctrine and thus lay outside the district-court jurisdiction, which might be exercised only in a direct attack brought under PURA § 69. The Commission alleged the same "collateral attack" theory and, in addition, prayed for dismissal of the plaintiffs' causes of action on the basis of the doctrine of "sovereign immunity."

■ After hearing, the trial court ordered dismissal of the plaintiffs' causes of action on two grounds: (1) that a motion for rehearing under APTRA § 16(e), which the plaintiffs did not file in the Commission, "is a jurisdictional prerequisite to any judicial review of a Commission proceeding"; and (2) "that all other claims in the Plaintiffs' First Amended Original Petition constitute impermissible collateral attacks on the Commission order." We must uphold the judgment on any legal theory that was before the district court, even if it gave an incorrect reason for its judgment dismissing the plaintiffs' causes of action. *Guar. County Mut. Ins. Co. v. Reyna,* 709 S.W.2d 647, 648 (Tex.1986).

## DISCUSSION AND HOLDINGS

The plaintiffs appeal to this court on a single point of error: the district court erred in dismissing the cause "based on [an] erroneous theory of law that the [Commission] had exclusive jurisdiction of the claims." The plaintiffs' argument under the point is difficult to follow. In the interests of justice, however, we shall do our best to determine whether the district court had jurisdiction of any of the causes of action alleged by the plaintiffs in their First Amended Original Petition. We glean from the plaintiffs' argument these points: (1) the plaintiffs' claims for declaratory and injunctive relief were not forbid-

den by the collateral-attack doctrine; and (2) their claims for money damages were not within the Commission's jurisdiction, and could not, in consequence, amount to a collateral attack upon the Commission's final order.

■ The ordinance and the Commission's order carry a presumption of validity. *Corzelius v. Harrell,* 143 Tex. 509, 186 S.W.2d 961, 967 (1945); *Kousal v. Texas Power & Light Co.,* 142 Tex. 451, 179 S.W.2d 283, 286 (1944). This means that the law presumes that each was promulgated in compliance with all statutory requirements and other legal duties, that facts existed to justify the ordinance and the order, and that each was enacted on sufficient evidence. 73A C.J.S. Public Administrative Law and Procedure § 153, at 135 (1983).

### Plaintiffs' Claims Against the Commission

■ Concerning the plaintiffs' claims against the Commission, we believe the district court lacked jurisdiction under the doctrine of governmental immunity. *Director, Etc. v. Printing Industries Ass'n,* 600 S.W.2d 264, 265 (Tex.1980). The plaintiffs do not contend their suit was founded upon a legislative consent to suit, and we think it obvious that the various causes of action were aimed at controlling State action or at subjecting the State to liability. This is plainly the case as to the plaintiffs' claims for money damages, but it is also true concerning their claims for injunctive and declaratory relief under the Uniform Declaratory Judgments Act. *See W.D. Haden Company v. Dodgen,* 158 Tex. 74, 308 S.W.2d 838, 841–42 (1958).

The Commission's plea of governmental immunity also reaches the plaintiffs' causes of action under 42 U.S.C.A. §§ 1983, 1985, and 1988 because the Commission is an arm of the State and thus not a "person" within the meaning of § 1983, which statute does not override the traditional sovereign immunity of the States. *Howlett v. Rose,* — U.S. —, —, 110 S.Ct. 2430, 2442–43, 110 L.Ed.2d 332, 353 (1990). Indeed, a State may not by common-law deci-

sion or by statute consent to liability under § 1983, for doing so would alter the elements of the § 1983 cause of action in violation of the Supremacy Clause. *Howlett,* —— U.S. at ——, 110 S.Ct. at 2442, 110 L.Ed.2d at 353.

The State has, of course, consented to suit in PURA § 69 and APTRA § 12, authorizing, respectively, suits for judicial review of the Commission's final orders and suits to determine the validity or applicability of agency rules. An essential element of the former cause of action is a motion for rehearing filed in the Commission under APTRA § 16(e). It is undisputed that the plaintiffs omitted to comply with this prerequisite to judicial review under PURA § 69, a "jurisdictional" prerequisite in the sense of being a requirement for the exhaustion of administrative remedies. *Lindsay v. Sterling,* 690 S.W.2d 560, 563 (Tex.1985).

Was the district court bound by APTRA § 12 to exercise jurisdiction by rendering a declaratory judgment as to the validity or applicability of Rule 21.62(g)? The provisions of APTRA § 12 are taken basically from the Revised Model State Administrative Procedure Act § 7, 14 U.L.A. 400 (1961). It is said that the model-act provisions in § 7 were designed to remove certain grounds upon which courts sometimes denied relief under general declaratory-judgment statutes: exhaustion of administrative remedies, exclusivity of another remedy, and the absence of a "justiciable controversy." 1 Cooper, State Administrative Law 246–47 (1965). One observes that a denial of declaratory relief on the ground of *primary jurisdiction* is not one of the listed grounds; and we have held, accordingly, that the precepts of the primary-jurisdiction doctrine may permit a district court, in its discretion, to deny declaratory relief under APTRA § 12. *Southwestern Bell Tel. v. P.U.C. of Tex.,* 735 S.W.2d 663, 669–70 (Tex.App.1987, no writ). For reasons that appear below, it is not necessary to discuss here the relevant distinctions. It is sufficient simply to say that one should not confuse the doctrines of primary jurisdiction and exhaustion of administrative remedies. *See e.g.,* Shannon, *Declaratory Judgments Under the Texas Administrative Procedure and Texas Register Act: An Underutilized Weapon,* 41 Baylor L.Rev. 601, 618–19 (1989).

The scope of APTRA § 12 is limited in all events by the separation-of-powers doctrine, a part of the checks-and-balances system of the State constitution. Under that doctrine, the Legislature may not confer upon the district courts a power that lies outside the "judicial power," such as a power belonging to the legislative or executive (administrative) departments. *Gerst v. Nixon,* 411 S.W.2d 350, 353–54 (Tex.1966); *Davis v. City of Lubbock,* 160 Tex. 38, 326 S.W.2d 699, 713–15 (1959). Thus, the remedy afforded by the Uniform Declaratory Judgments Act cannot require the district courts to render advisory opinions. *United Services Life Insurance Company v. Delaney,* 396 S.W.2d 855, 858–64 (Tex.1965). The same constitutional doctrine also curtails the permissible scope of APTRA § 12. One form of advisory opinion is that which decides a controversy that has become moot—a case involving a right that cannot be effectuated by the court's judgment. *See Stewart v. Bank of Woodson,* 641 S.W.2d 230, 231 (Tex.1982); *see also,* Calvert, *Declaratory Judgments in Texas— Mandatory or Discretionary?,* 14 St. Mary's L.J. 1, 13–14, 16 (1982) (analyzing the Uniform Declaratory Judgments Act). The plaintiffs' claim under APTRA § 12 is moot because Rule 21.62(g) purports to be effective only within the context of an appeal to the Commission under PURA § 26(c), and the controversy within that appeal is now at an end because the plaintiffs did not file the motion for rehearing necessary to sue for judicial review of the Commission's final order, and therefore did not take the only step that could have vacated the final order. APTRA § 19(b)(3). Even if the district court should declare the validity or applicability of Rule 21.62(g), as the plaintiffs request, that court would be powerless to revive in some manner the plaintiffs' appeal under PURA § 26, the only context in which the court's declaratory judgment could have legal effect. We hold accordingly.

■ While the plaintiffs have alleged violations of their constitutional rights, and consent to suit is not necessary in such cases when vested property rights are affected adversely, *Brazosport Sav. & L. Ass'n v. American Sav. & L. Ass'n*, 161 Tex. 543, 342 S.W.2d 747, 750 (1961), there is no allegation in the plaintiffs' pleading from which such a vested right might be inferred. Under PURA, no one has a vested right in any particular utility rate, but only a statutory right shared with others to have rates that are "just, fair and reasonable," as fixed by the appropriate regulatory body subject to judicial review for errors of law under PURA § 69. PURA § 18; *Southwestern Bell, Etc. v. Public Util., Etc.*, 615 S.W.2d 947, 957 (Tex.Civ. App.1981, writ ref'd n.r.e., 622 S.W.2d 82 (Tex.1981)); *see* J. Shaw, anno. *Civil Rights: Racial or Religious Discrimination in Furnishing of Public Utilities Services or Facilities*, 53 A.L.R.3d 1027 (1973). The remedies allowed under 42 U.S.C.A. §§ 1983, 1985, and 1988 "may not be used as a vehicle to threaten every exercise of discretion in matters legitimately within an area of a state's competence." 14 C.J.S. Supp., Civil Rights, § 87, at 147 (1974).

Because we believe the plaintiffs' causes of action were properly dismissed for want of jurisdiction, we need not discuss the doctrine of "collateral estoppel" as it might apply to the plaintiffs' causes of action against the Commission. Much of what we say below, however, would apply with equal force to those actions.

*Plaintiffs' Claims Against the City*

■ Concerning the plaintiffs' claims against the City, we believe the district court properly dismissed these under the doctrine forbidding collateral attacks against city ordinances. The doctrine holds that the validity of a city ordinance may not ordinarily be challenged save in a direct proceeding, an exception being recognized for instances in which the ordinance is void on its face or the city had no power to enact it. *City of Wichita Falls v. Bowen*, 143 Tex. 45, 182 S.W.2d 695, 698 (1944); 6 McQuillin, Municipal Corporations § 20.14,

45–46 (3rd ed., 1988 rev. ed.); 62 C.J.S. Municipal Corporations § 206, at 387–88 (1949).

■ In the present case, the plaintiffs have not alleged the ordinance is void; they complain only that it is *erroneous* because it permits the utility to recover through its rates certain expenditures that PURA prohibits. To remedy the errors, the plaintiffs have alleged common-law actions for fraud and for an accounting, as well as an action for vindication of their civil rights under 42 U.S.C.A. §§ 1983, 1985, and 1988. We see nothing in these allegations that takes the case out of the collateral-attack doctrine.

Concerning the plaintiffs' allegations of fraud and a right to an accounting, we believe these fall plainly within the collateral-attack doctrine because they seek recovery on a premise that the rates are merely erroneous under the ratemaking provisions of PURA. This premise may be established only in a direct proceeding under PURA § 26(c), and reviewed for errors of law under PURA § 69. This is the sole remedy prescribed by the very statutory scheme upon which the plaintiffs rely as a basis for their contention that the rates are erroneous.

Concerning the plaintiffs' claim in vindication of their civil rights, there is no allegation that the relevant statutory provisions have been applied to them differently than they would be applied to anyone else; that is to say, there is no claim of discrimination. They allege only that the city ordinance is legally erroneous under the ratemaking provision of PURA. This cannot serve as a basis for a civil-rights action for the reasons given above.

We believe, for the foregoing reasons, that the trial court properly dismissed all the causes of action pleaded by the plaintiffs.

■ We modify the district-court judgment, however, to delete that portion which decrees that "[t]he Plaintiffs take nothing on their First Amended Original Petition." Having adjudged that it had no jurisdiction over the plaintiffs' claims, the district court

could not contemporaneously order that they take nothing thereby.

We affirm the judgment as modified.