# IN THE SUPREME COURT OF TEXAS

════════════
No. 10-0121
════════════

THE FINANCE COMMISSION OF TEXAS, THE CREDIT UNION COMMISSION OF
TEXAS, AND TEXAS BANKERS ASSOCIATION, PETITIONERS,

v.

VALERIE NORWOOD, ELISE SHOWS, MARYANN ROBLES-VALDEZ, BOBBY
MARTIN, PAMELA COOPER, AND CARLOS RIVAS, RESPONDENTS

════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS
════════════════════════════════════════════════════

**Argued September 13, 2011**

JUSTICE JOHNSON, concurring in part and dissenting in part, and dissenting from the judgment.

I dissent from parts III and IV of the Court's opinion and from its judgment.

Six homeowners filed suit in this case three weeks after the Finance and Credit Union Commissions' interpretations of the home equity lending provisions in Section 50 became effective. The Homeowners challenged seventeen of the interpretations, but did not allege that any of the interpretations impacted a loan they applied for or considered applying for, or that they had been discouraged from applying for a loan by the interpretations. Nor does the record contain facts showing how any one, much less all, of the interpretations caused the Homeowners an actual, imminent, potential, or even hypothetical particularized injury.

In post-submission briefing the Commissions argue that the matter should be remanded to the trial court to give the Homeowners the opportunity to replead so they can show jurisdictional facts. Instead of giving them that opportunity, the Court concludes the Homeowners have standing to challenge all the interpretations because their pleadings implicitly allege injury to their "prospective interest" in home equity loans. It then addresses the merits in what I view as an advisory opinion. For the reasons expressed below, I would remand the case to the trial court to allow the Homeowners to replead or otherwise attempt to show jurisdiction.

The Commissions' interpretations of the lending provisions became effective on January 8, 2004. *See* 7 TEX. ADMIN. CODE §§ 153.1–.96. Approximately three weeks later the Homeowners sued the Commissions under provisions of the Administrative Procedures Act (APA), TEX. GOV'T CODE § 2001.038, and the Declaratory Judgments Act (DJA), TEX. CIV. PRAC. & REM. CODE §§ 37.001–.011, seeking a declaratory judgment invalidating seventeen interpretations that addressed nine substantive provisions of section 50. The Homeowners alleged they were Texas homeowners who had each taken out a home equity loan. They asserted that the substance of the challenged interpretations either contradicted the plain meaning and intent of the Constitution or amounted to rules the Commissions had no authority to enact and referenced home equity lending practices outside of Texas that led to alleged adverse experiences for borrowers. The Homeowners' petition set out in a brief and conclusory nature their relationship to the interpretations they challenged:

## VI. CAUSES OF ACTION

[The Commissions] have adopted interpretations and rules in violation of the Texas Constitution which interfere with or impair, or threaten to interfere with or impair, a legal right or privilege of Plaintiffs. Pursuant to Section 2001.038 of the Texas

2

Government Code, and Chapter 37 of the Texas Civil Practice & Remedies Code, Plaintiffs seek a declaratory judgment to invalidate the following rules and interpretations: Rules 153.1(11); 153.5(3),(4),(6),(8),(9),(12); 153.12(2); 153.13(4); 153.15(2),(3); 153.18(3); 153.20; 153.22; 153.51(1),(3); and 153.84(l).

In none of their four amended pleadings filed over the next year and a half did the Homeowners explain or allege facts showing (1) how any one—much less all—of the challenged interpretations affected any of them in the past, (2) how any of the interpretations probably would affect any of them in the future, (3) that any of them were considering obtaining a home equity loan to which any of the interpretations would apply, or (4) that one or more of the challenged interpretations caused any of them to be discouraged from considering seeking a home equity loan. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993) (explaining that to show subject-matter jurisdiction the pleader must "allege facts that affirmatively demonstrate the court's jurisdiction to hear the cause").

The Texas Banker's Association (TBA) intervened in support of the Commissions and the parties filed cross-motions for summary judgment. The trial court signed a final judgment on April 29, 2006—over two years after the plaintiffs filed suit. The judgment invalidated all or parts of thirteen rules interpreting seven constitutional provisions and upheld four rules interpreting two.[1] The Commissions repealed the invalidated interpretations as to three constitutional provisions, but appealed, along with the TBA, as to rules interpreting four provisions. The Homeowners appealed

---

[1] The trial court invalidated the following Rules: 153.1(11); 153.5(3), (4), (6), (8), (9), and (12); 153.12(2) as to orally submitted loan applications; 153.13(4); 153.18(3), 153.20; 153.22; and 153.84(1). It denied the plaintiffs' challenge to the following Rules: 153.15(2) and (3); and 153.51(1) and (3).

as to two interpretations the trial court upheld. The court of appeals addressed the merits of the appeal. It affirmed in part and reversed and rendered in part. 303 S.W.3d 404, 418.

Neither the parties nor the lower courts addressed jurisdiction. But courts must have jurisdiction in order to address the merits of a cause, and this Court requested post-submission briefing on the question. *See, e.g.*, *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553-54 (Tex. 2000) (noting that a court must not act unless it has subject-matter jurisdiction).

One component of subject-matter jurisdiction is standing, which stems from constitutional separation of powers and open courts provisions. *See Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 646 (Tex. 2004); *Patterson v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 971 S.W.2d 439, 442-43 (Tex. 1998); *Tex. Ass'n of Bus.*, 852 S.W.2d at 443. The separation of powers provision in the Texas Constitution specifies that the powers of government are divided into three parts—the legislative, the executive, and the judicial. TEX. CONST. art. II, § 1. It also specifies that persons of one branch shall not exercise any power properly attached to either of the others except as the Constitution expressly permits. *Id.* The Constitution does not afford courts jurisdiction to issue advisory opinions; those are a function of the executive department. TEX. CONST. art. IV, §§ 1, 22 (specifying that the attorney general is part of the executive department and empowering the attorney general to issue advisory opinions to the governor and other officials); *e.g.*, *Valley Baptist Med. Ctr. v. Gonzalez*, 33 S.W.3d 821, 822 (Tex. 2000) (per curiam) ("Under article II, section 1 of the Texas Constitution, courts have no jurisdiction to issue advisory opinions."); *see also Patterson*, 971 S.W.2d at 442 ("The constitutional roots of justiciability doctrines such as ripeness, as well as standing . . . , lie in the prohibition on advisory opinions, which in turn stems from the separation

4

of powers doctrine."). And the open courts provision contemplates access to courts only for persons who have suffered an injury. TEX. CONST. art. I, § 13 ("All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law."); *see Tex. Ass'n of Bus.*, 852 S.W.2d at 444. Thus, standing requires a justiciable injury that gives rise to a real controversy which judicial action can resolve. *Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 517-18 (Tex. 1995); *see Tex. Ass'n of Bus.*, 852 S.W.2d at 444 (recognizing Texas courts have no jurisdiction to render opinions that, rather than remedying an actual or imminent harm, decide abstract questions of law without binding the parties).

If the record presents a standing issue the parties have failed to raise, courts must do so *sua sponte*. *See Garcia*, 893 S.W.2d at 517 n.15; *Tex. Ass'n of Bus.*, 852 S.W.2d at 445-46. However, when the issue is addressed for the first time on appeal, plaintiffs do not have the same opportunity to replead and attempt to demonstrate jurisdiction or direct discovery to the jurisdictional issue as they have when standing is addressed in the trial court. So, when an appellate court is the first to consider jurisdictional issues, it construes the pleadings in favor of the plaintiff and, if necessary, reviews the record for evidence supporting jurisdiction. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446. If the appellate court determines that standing has not been alleged or shown but the pleadings and record do not demonstrate an incurable jurisdictional defect, the case is remanded to the trial court where the plaintiff is entitled to a fair opportunity to develop the record relating to jurisdiction and to replead. *See Westbrook v. Penley*, 231 S.W.3d 389, 395 (Tex. 2007).

The APA authorizes declaratory judgment actions challenging agency rules or threatened applications of them. TEX. GOV'T CODE § 2001.038. The statute requires allegations that the "rule

or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff." *Id.* The Court concludes that the Homeowners satisfied this requirement. ___ S.W.3d ___, ___. But persons seeking relief under section 2001.038 of the APA and the DJA must still meet constitutional requirements of a justiciable injury, and the Homeowners did not. *See Lopez v. Pub. Util. Comm'n of Tex.*, 816 S.W.2d 776, 782 (Tex. App.—Austin 1991, writ denied).

The separation of powers issue as to the APA and the DJA was directly addressed in *Lopez*. *Id.* There, the court of appeals considered whether former section 12 of the Texas Administrative Procedure and Texas Register Act (APTRA)—the predecessor to section 2001.038—was subject to constitutional provisions precluding courts from making advisory decisions. *See id.* (analyzing TEX. REV. CIV. STAT. ANN. art. 6252-13a, § 12).

The court held that neither the DJA nor the APTRA could constitutionally authorize courts to decide cases when no justiciable injury existed:

> The scope of APTRA § 12 is limited in all events by the separation-of-powers doctrine, a part of the checks-and-balances system of the State constitution. Under that doctrine, the Legislature may not confer upon the district courts a power that lies outside the "judicial power," such as a power belonging to the legislative or executive (administrative) departments. Thus, the remedy afforded by the Uniform Declaratory Judgments Act cannot require the district courts to render advisory opinions. The same constitutional doctrine also curtails the permissible scope of APTRA § 12.

*Id.* (citations omitted).

Of course, a plaintiff without an existing actual injury caused by a rule may demonstrate a justiciable injury sufficient for jurisdiction by showing that the rule in reasonable probability will

6

be applied to him in the future and its application will impair a particular, specific right. For example, in *State Board of Insurance v. Deffebach*, the court had jurisdiction because the plaintiff showed that an agency's enforcement of a rule would adversely affect him. *See* 631 S.W.2d 794, 797 (Tex. App.—Austin 1982, writ ref'd n.r.e.). Deffebach, a credit life insurance agent, filed suit under APTRA section 12 seeking a declaratory judgment invalidating a Board of Insurance order. *Id.* at 796. The trial court found the Board's order would reduce premiums paid for credit life insurance and it would reduce Deffebach's income from commissions, then declared part of the order invalid. *Id.* On appeal, the Board argued that Deffebach lacked standing to sue. *Id.* The court of appeals disagreed, noting that under section 12, "one is not required to wait until the rule is attempted to be enforced against him before he may resort to declaratory relief." *Id.* at 797. The court held that because implementation of the order would clearly affect Deffebach's future commissions as a credit life insurance agent, he had standing under section 12. *Id.*

The analyses of the courts in *Lopez* and *Deffebach* exemplify the axiom that statutes are subject to constitutional provisions. *See Cramer v. Sheppard*, 167 S.W.2d 147, 155 (Tex. 1942) ("Certainly a statute cannot override the Constitution."). When a litigant claims a hypothetical or possible impairment of rights because of a rule or its possible application—as opposed to claiming an existing or reasonably probable application that will cause particularized, specific injury—the claim calls for an advisory opinion. Thus, to have standing under section 2001.038, plaintiffs' pleadings must contain more than conclusory statements that their rights have been or probably will be impaired. The pleadings must allege, or the record must demonstrate, facts showing how a particular rule has already interfered with the plaintiffs' rights or how that rule in reasonable

7

probability will interfere with the plaintiffs' rights in the future. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 446.

As noted above, the court of appeals addressed the issue of standing based on a potential injury in *Deffebach*. This Court also recently did so in *Andrade v. NAACP of Austin*, 345 S.W.3d 1, 18 (Tex. 2011). There the jurisdictional question was whether registered voters had standing to challenge the use of electronic voting machines that did not produce a contemporaneous paper record of each vote. *Id.* at 4. The basis for the plaintiffs' claims was that the lack of such a record made it less likely their votes would be counted. *Id.* at 10. As the Court notes, our reasoning for concluding the plaintiffs had standing was that if use of the electronic machines produced a legally cognizable injury, the registered voter plaintiffs "are among those who have sustained it." *Id.* Here, although the Homeowners challenged seventeen rules interpreting nine different constitutional provisions, they did not allege, nor does the record demonstrate, how any of the interpretations, even if invalid, has impaired, or probably will later impair, their individualized, particularized interests. In other words, they have not demonstrated even the type of situation this Court found sufficient for standing in *Andrade* where no existing injury was shown: the Homeowners have not actually or implicitly alleged or shown that if any of the Commissions' interpretations are invalid and applied then they are among those whose individual interests will be affected by that interpretation.

The Court concludes that "injury to the interest in obtaining a home equity loan resulting from the Commissions' alleged misinterpretations" is sufficient for standing. ___ S.W.3d at ___. It then concludes that a "prospective interest" in home equity loans is implicit in the Homeowners' pleadings because otherwise their allegation that the Commissions' interpretations threaten to

8

interfere with or impair their legal rights cannot be true. But even if the Homeowners' pleadings are liberally read to include their having a prospective interest in a loan, such a reading necessarily concedes that the pleadings do not actually or implicitly allege an existing interest in a loan that will be impaired by any of the interpretations—only a hypothetical, potential one in the future. And because the Homeowners have home equity loans now does not mean that if the alleged interpretations are invalid, the Homeowners are among those who will have sustained injury from them. Having a potential or prospective future interest in a home equity loan simply is not the same as having an existing interest. A speculative injury by the interpretations to a possible or prospective interest is not sufficient for standing, even under the Court's conclusion that injury to an "interest in obtaining a home equity loan" is sufficient.

The Court asserts that section 50(u)—the "safe harbor" provision—"creates an exceptional context in which to assess standing." ___ S.W.3d at ___. I recognize that the circumstances before us are unusual. Ordinarily, if a lender's actions do not conform to constitutional or statutory provisions and a borrower suffers detriment as a result, a controversy will exist between the borrower and lender for which the borrower can seek judicial redress. Here, the Constitution prevents that so long as the lender complies with the Commissions' interpretations of the provisions. TEX. CONST. art. XVI, § 50(u). The Court asserts that under the safe harbor provision a lender's compliance with a misinterpretation can be no injury at all to a borrower. ___ S.W.3d at ___. But because a lender cannot be liable if it complies with the interpretations does not mean that a borrower is not in worse position than had the lender complied with the constitutional provisions. The safe harbor provision protects lenders from liability for their lending actions much as statutes of limitations protect parties

9

from liability for stale claims. But because a defendant cannot be held liable for a claim barred by limitations, or because a lender cannot be liable for a claim covered by the safe harbor provision, that does not mean the injured party was not injured—it just means that the injuring party does not suffer legal consequences for its actions. But the Commissions are another matter; they do not claim to enjoy a safe harbor as to their interpretations.

I see no standing barrier to a homeowner seeking a declaratory judgment if the homeowner alleges or shows that a lender's actions conformed to an invalid interpretation and the homeowner is in a worse position than it would have been if the lender had complied with the applicable constitutional lending provisions. For example, if the Homeowners here had pleaded[2] facts showing that a Commission interpretation of the constitutional provision capping fees at three percent of the principal amount of a home equity loan (1) existed when they took out home equity loans or when they sought home equity loans and was incorporated into the lending process, or would in reasonable probability be incorporated into a new home equity loan they will seek, and (2) loans conforming to the interpretation resulted, or probably will result, in fees exceeding the constitutional limitations, then in my view they would have standing to sue the Commissions for a declaratory judgment that the interpretation is invalid. The same goes for a homeowner who would have applied for and obtained a home equity loan but for one of the other interpretations the plaintiffs challenged, or considered applying for one and was discouraged from doing so by one of the Commissions' interpretations. The problem is these Homeowners did not even allege that because of one or more

---

[2] Of course, the plaintiffs' pleadings would be subject to TEX. R. CIV. P. 13 that precludes fictitious suits to get an opinion of the court.

10

of the alleged misinterpretations they decided not to apply for a home equity loan or that they probably will not apply for or obtain one in the future. If they had done so, then they reasonably would have pointed out one or two particular interpretations and specific facts and reasons underlying their claims. Then the courts could address a concrete, particularized injury and controversy.

TBA candidly argues in its briefing that this Court should decide this case because "[i]t is important to the banking industry to have the questions regarding the constitutionality of the Commissions' home equity lending interpretations decided in this litigation." There is no doubt that the questions presented are important. But the parties' desire for clarity cannot override constitutional mandates precluding courts from issuing advisory opinions. *See* TEX. CONST. art. I, § 13; *id.* art. II, § 1; *see also Andrade*, 345 S.W.3d at 18 (recognizing that "[a] desire to have the government act in conformance to the law is not enough" for standing to bring suit); *Gen. Land Office v. OXY U.S.A., Inc.*, 789 S.W.2d 569, 572 (Tex. 1990) ("[T]he fact that an important question of administrative law is involved, the resolution of which would aid the agency, is not sufficient impetus for this court to render an advisory opinion.").

The Court acknowledges standing principles, then disregards them in determining these plaintiffs have sufficient "prospective interest" to confer standing despite their unquestioned failure to show a concrete, actual or imminent particularized injury, which is traceable to a particular interpretation, and that will be redressed by our decision. *See DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304-05 (Tex. 2008) (explaining that the standing doctrine has constitutional roots and requires that a plaintiff must be "personally aggrieved; his alleged injury must be concrete and

11

particularized, actual or imminent, not hypothetical") (citations omitted); *Brown v. Todd*, 53 S.W.3d 297, 305 (Tex. 2001) (citing with approval federal requirements that to have standing the claimant must have an injury fairly traceable to the defendant's allegedly unlawful conduct, the injury must be concrete and particularized, and the injury is likely to be redressed by the requested relief).

I would hold that the Homeowners have not established standing to bring their claims. As a result, the trial court lacked jurisdiction to address the merits of the suit. *See Inman*, 252 S.W.3d at 304; *State Bar of Tex. v. Gomez*, 891 S.W.2d 243, 245 (Tex. 1994); *Tex. Ass'n of Bus.*, 852 S.W.2d at 443-44. Because the trial court lacked jurisdiction to decide the merits, the court of appeals likewise lacked it and so does this Court.

The Commissions suggest that if the Court were to determine the Homeowners do not have standing, the case should be abated and remanded to the trial court rather than dismissed because the Homeowners' pleadings did not affirmatively negate jurisdiction. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226-27 (Tex. 2004). I agree in part. I would not abate the case, but would remand it to the trial court. The defect in the record is one of omission. The Homeowners failed to allege or demonstrate how any of the Commissions' interpretations interfered with or in reasonable probability will interfere with their rights, privileges, or interests. *See* TEX. GOV'T CODE § 2001.038; *Tex. Ass'n of Bus.*, 852 S.W.2d at 446 (stating that a pleader must allege facts that affirmatively demonstrate a court's jurisdiction). The Homeowners do not affirmatively negate jurisdiction. Their pleadings do not disclaim intent to seek or acquire additional home equity loans, nor disclaim that they have been discouraged from seeking a home equity loan because of the interpretations. And the Homeowners have not otherwise precluded themselves from alleging facts

12

to show that the interpretations discourage them from seeking a loan, or if they attempt to or actually do take out loans, the Commissions' interpretations in reasonable probability will cause interference with their rights or privileges. If the Court were to remand to the trial court, the Homeowners could attempt to show jurisdiction. Then the trial court would have specific facts to consider in determining if the plaintiffs indeed have demonstrated standing to challenge the interpretations, and if they have, to decide the merits of those challenges. *See Penley*, 231 S.W.3d at 395; *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 559 (Tex. 2002).

_____
Phil Johnson
Justice

**OPINION DELIVERED:** June 21, 2013