

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-23-00042-CV

EVE HAYEK, APPELLANT

V.

MILES THOMAS RYAN, APPELLEE

On Appeal from the 345th District Court
Travis County, Texas
Trial Court No. D-1-FM-22-002911, Honorable Jessica Mangrum, Presiding

January 8, 2024

MEMORANDUM OPINION[1]

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

"[T]he trial [court] necessarily ignored, and necessarily negated, a decade of settled stability and efficacious parenting by Ms. Hayek, a decade that produced happy, healthy, and normal children."  Such is the theme of Eve Hayek's appeal from a final divorce decree adjudicating the conservatorship and possession of the two children born to her marriage with Miles Thomas Ryan.  And, in pursuing it, she would have us eschew

---

[1] This appeal was originally filed in the Third Court of Appeals and was transferred to this Court by a docket equalization order of the Supreme Court of Texas.  *See* TEX. GOV'T CODE ANN. § 73.001.  In the event of any conflict, we apply the transferor court's case law.  TEX. R. APP. P. 41.3.

the pertinent standards of review and adopt her version of the evidence. Simply put, the trial court did not ignore or negate a decade of stability and efficacious parenting by Hayek; the divorce did. And, the trial court was free to rely on the following evidence when awarding Ryan equal possession and various exclusive rights, as a joint conservator: 1) Hayek's daily use of use of marijuana and prescribed THC,[2] 2) her use of marijuana while on children play dates and with other parents, 3) her use of the drugs while driving her children, 4) her use of the drugs with other drugs like antidepressants, 5) her $600 a month "pot" budget while married, 6) her drug nail test once indicating a level "61 times over the cutoff limit for the drug screen for . . . cannabinoids," 7) her smoking marijuana through four pregnancies,[3] 8) her attitude that she should be able to consume whatever she cared to since she was "an adult," 9) her depression and PTSD, 10) her purportedly debilitating Crohn's disease, 11) her vacillation regarding a long-term home for the children, and 12) her "technical" (her word) failure to abide by a prior "drug screening" order. Due to these and other circumstances discussed below, we affirm the trial court's judgment.

### Background

Coins have two sides. The two-sided coin here shows the historic willingness of both parents to regularly engage in the local drug culture. Whether the children were in the vicinity mattered not. As Hayek acknowledged, they were free to do what they chose

---

[2] "THC is an abbreviation for tetrahydrocannabinol, which is marijuana's active ingredient." *Teneyck v. Teneyck*, No. 02-22-00437-CV, 2023 Tex. App. LEXIS 6952, at *9 n.2 (Tex. App.—Fort Worth Aug. 31, 2023, no pet.) (mem. op.); "THC is a resin secreted from the hemp plant known as Cannabis sativa L. (marihuana). THC is the psychoactive ingredient responsible for euphoriant and hallucinogenic properties of the plant and its products." *In re B. L. B.*, No. 03-09-00264-CV, 2010 Tex. App. LEXIS 3886, at *4-5 (Tex. App.—Austin May 20, 2010, no pet.) (mem. op.).

[3] Two ended with miscarriage.

given their status as adults. Ryan also drank alcohol on a regular basis, according to her. He further grew and consumed "mushrooms" containing psilocybin.[4] Yet, Ryan testified to changing his ways and having ceased his ingestion of marijuana and mushrooms. So too had he leased a home to provide a definitive, stable abode for the children once the family separated.

Hayek moved in with her parents, resulting in one child sleeping on the floor and eventually in a bed next to her grandparents. Though desirous of constructing a "barndominium" on her parents' property, she had "no money other than child support[.]" When asked of her plans should she be unable to build on her parents' property, the trial court heard her reply that she would buy a home near her parents. Yet, remaining inside her parents' home, building on her parents' land, or buying a home elsewhere depended on selling the marital home and the sum gained thereby.

Ultimately, the trial court appointed both parents managing conservators of their children. Ryan received the exclusive right to dictate the primary residence of the children and make other decisions affecting them. So too did the court 1) grant equal possession, 2) order Hayek to undergo victim abuse counseling, and 3) direct Hayek to submit to several drug screens at times selected by Ryan. These matters underly the twelve issues Hayek presents us.

### Issue One

Hayek alleges that the trial court abused its discretion by ordering her to complete a minimum of ten domestic violence counseling sessions through SAFE by March 1,

---

[4] Psilocybin is a controlled substance, *see* TEX. HEALTH & SAFETY CODE ANN. § 481.103(a)(5)(B)(ii), "commonly referred to as 'mushrooms.'" *Barnett v. State*, Nos. 05-96-01654-CR, 05-96-01655-CR, 1998 Tex. App. LEXIS 3008, at *2 n.1 (Tex. App.—Dallas May 21, 1998, no pet.) (mem. op., not designated for publication).

3

2023. Allegedly, "there was no evidence before the trial court that she had ever even been 'aggressive' toward Mr. Ryan; instead, aggression, purely and simply, was Mr. Ryan's forte." We overrule the issue.

Hayek acknowledges that "[i]n the Austin area, SAFE provides services to **victims** of abuse." (Emphasis in the original). So too does she cite evidence showing her to be a victim of abuse perpetrated by Ryan. With Hayek's being such a victim, the trial court's decision to have her undergo relevant counseling via a program aimed at helping victims constitutes no abused discretion. *In re Marriage of Bridenthal*, No. 07-23-00034-CV, 2023 Tex. App. LEXIS 6336, at *2 (Tex. App.—Amarillo Aug. 17, 20023, pet denied) (mem. op.) (describing abused discretion as occurring when the evidence or law shows the court acted unreasonably, arbitrarily, or without reference to guiding principles). Indeed, Hayek does not explain why her not being "aggressive" should excuse her from submitting to victim counseling. Nor does she explain why ordering such counseling was not in the best interests of her children.

As for the suggestion that the trial court erred by not also ordering Ryan to submit to counseling, Hayek cites no authority holding that it must pursue an all-or-nothing approach. Nor do we know of such authority. Without it, we hesitate to place such a mandate upon the trial court's exercising its considerable discretion in the matter of child custody.

Nor did our review of the record illustrate that the purported omission from the final judgment was brought to the trial court's attention through available post-judgment motions. Thus, Hayek also failed to preserve the issue for review. *See* TEX. R. APP. P. 33.1(a)(1)-(2) (stating that as a prerequisite to presenting an issue for review, the record

4

must show the complaint was made to the trial court by a timely request, objection, or motion, on which request, objection, or motion the trial court ruled).

### *Issues Two, Three, Four, Seven and Ten*

Through issues two, three, four, seven, and ten, Hayek attacks the trial court's decision to grant Ryan the exclusive right to designate the children's primary residence and to enroll them in school. The latter implicates the sufficiency of the evidence supporting the decision. We overrule each.

When parents are designated joint managing conservators (as were those at bar), the trial court must award one of them the exclusive right to designate the child's primary residence. *Chia-Ying Persephone Chen v. Hernandez*, No. 03-11-00222-CV, 2012 Tex. App. LEXIS 7518, at *53 (Tex. App.—Austin Aug. 28, 2012, pet. denied) (mem. op.) (citing TEX. FAM. CODE ANN. § 153.134(b)(1)). In making the selection, a trial court exercises broad discretion. *Strong v. Strong*, 350 S.W.3d 759, 765 (Tex. App.—Dallas 2011, pet. denied). We cannot disturb its exercise unless the record demonstrates the trial court acted in an arbitrary or unreasonable manner or without reference to guiding principles. *Id*. The same discretionary standard encompasses the decision to grant Ryan the exclusive right to enroll the children in school, for it too relates to custody and possession. Finally, under the controlling discretionary standard, a decision is not erroneous if supported by any theory appearing of record, even one neither the trial court nor parties mentioned. *Guar. County Mut. Ins. Co. v. Reyna*, 709 S.W.2d 647, 648 (Tex. 1986); *Payton v. Ashton*, 29 S.W.3d 896, 899 n.3 (Tex. App.—Amarillo 2000, no pet.); *Lopez v. Public Utility Com.*, 816 S.W.2d 776, 781 (Tex. App.—Austin 1991, writ denied). Simply put, the trial court cannot abuse its discretion in reaching a correct result for the wrong

5

reasons. *Hsin-Chi-Su v. Vantage Drilling Co.*, 474 S.W.3d 284, 298 (Tex. App.—Houston [14th Dist.] 2015, pet. denied).

As conceded by Hayek, the best interest of the child is the primary consideration when determining conservatorship and possession issues. *Coleman v. Coleman*, 109 S.W.3d 108, 110 (Tex. App.—Austin 2003, no pet.). Moreover, parental drug use is highly relevant to the best interest determination. *T.D. v. Tex. Dep't of Fam. & Protective Servs*., No. 03-21-00387-CV, 2022 Tex. App. LEXIS 40, at *33 (Tex. App.—Austin Jan. 6, 2022, no pet.) (mem. op.) (so intimating). Indeed, it carries great weight when determining whether to terminate the parent-child relationship. *In re O.J.C*., No. 04-23-00126-CV, 2023 Tex. App. LEXIS 5944, at *8 (Tex. App.—San Antonio Aug. 9, 2023 pet. denied) (mem. op.) (and cases cited therein). It should carry no less weight in general matters of custody and possession, short of terminating that relationship.

The record before the trial court is replete with evidence of Hayek's continuing use of marijuana and THC. Her comment about being an adult and free to ingest such substances at her discretion, the evidence of her ingesting marijuana while driving the children, her using it with friends while their children enjoy play dates, and the like is significant. From it, one can reasonably infer that she would not hesitate to expose the children to her actions and its consequences. Though the same could have been said of Ryan, the trial court was free to believe his testimony about his no longer ingesting such substances.

Admittedly, Hayek explained that she had a prescription for the THC and its use helped her deal with Crohn's disease. Yet, she cites us to no evidence illustrating that her ingesting THC or marijuana while driving her children around in a car is necessary to

6

combat the effects of Crohn's disease.[5] The same is true about her smoking dope with friends while their children played together. One can reasonably view those circumstances as merely supporting her general belief that she may consume dope whenever she wishes, irrespective of its impact on the children, because she is an adult. That viewpoint provides a trial court basis to intercede. Granting a parent who forsook drug use some measure of enhanced input in the rearing of children is reasonable or unarbitrary.

To that we add the indefiniteness surrounding the future abode of the children if Hayek had the right to designate their residence. She may be living with her parents, but she left the duration of that circumstance open to speculation. She may build a home in their backyard or she may not. She may buy a home elsewhere, or she may not. But, she could neither build nor buy because she lacked financial means to do either at time of trial.

That she also failed to submit to a fingernail test to gauge drug use within weeks of trial and as required by court order cannot be denied. She blamed it on her lawyer neglecting to tell her of the obligation. Of course, the trial court was under no obligation to believe her. Yet, even if true, the fact remains that she failed to comply with a drug

---

[5] Another matter warrants consideration. Implicit in Hayek's justification for ingesting THC and marijuana is the effect had upon her senses. They allegedly relieve her nausea and sooth the pain incidental to Crohn's disease. In other words, they do what they are meant to do . . . have some euphoric, if not hallucinogenic, impact. Having that effect, the drugs arguably alter her normal use of mental or physical faculties due to its influence upon pain receptors and brain activity. And, as the substance serves its purpose, one could legitimately question whether Hayek is intoxicated and committing a criminal act if she drives her children or engages in play dates while experiencing the supposed medicinal benefits of those drugs. *See* TEX. PENAL CODE ANN. § 49.01(2)(A) (defining intoxication as "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body"); *see also Miller v. State*, No. 02-17-00106-CR, 2018 Tex. App. LEXIS 2608, at *16-17 (Tex. App.—Fort Worth April 12, 2018, no pet.) (mem. op., not designated for publication) (finding the evidence sufficient to support the conviction for DUI due to the ingestion of marijuana).

7

screening order.  Both the lack of definite housing arrangements and noncompliance with a drug screening order were the substance of the subsidiary findings of fact attacked through issues two, three, and four.  She urged that neither were supported by sufficient evidence.  Yet, our perusal of the record discloses otherwise.

Application of the standard of review leads us to the conclusion that the trial court did not abuse its discretion in the manner suggested by Hayek.  So, again, we overrule the issues under review.

### Issue Eight, Nine, and Eleven

Through issues eight, nine, and eleven, Hayek attacks the trial court's decision to award the parents equal possession and to deviate from the standard possession order. Little analysis accompanies her argument.  Instead, she informs us that 1) "the trial court's reasoning for, and implementation of, its possession orders suffer from the same defects as those that plague its award of exclusive rights to Mr. Ryan" and 2) "[a]s a result, Ms. Hayek's legal and factual arguments against the trial court's possession orders are substantially the same as the arguments she already presented in response to the trial court's award of exclusive rights to Mr. Ryan."  Similarly, the reasoning underlying our disposition of issues two, three, four, seven, and ten provides ample basis upon which to overrule these complaints as well.  Hayek's persistent drug use, lack of a definitive long-term residence, economic circumstances, and the like insulate the trial court's decision to award both parents equal possession of the children from the allegation of abused discretion.

8

### Issue Five and Six

Through issues five and six, Hayek questions the evidentiary basis underlying the trial court's findings that "the parties prior to the final trial had been exercising possession in accord with an equal possession schedule and the children had benefitted from the schedule." We overrule these as well given Hayek's own testimony. She admitted that the equal possession ordered over the summer "worked very well."

### Issue Twelve

By her twelfth issue, Hayek argues that because "[t]he trial court gave Mr. Ryan sole discretion to require Ms. Hayek to undergo up to 4 'random' UA screens per year, at least for the first year after the parties' divorce . . . the screening orders are arbitrary and unreasonable." We overrule the issue.

The divorce decree permanently enjoins Hayek and Ryan from "[c]onsuming any controlled substances or any prescribed substances in a manner other than prescribed while in possession of the children." Elsewhere, the court said: "[f]or a period of one year following entry of this order so long as there are no positive tests it is ordered that [Hayek] shall submit to random drug testing by urinalysis . . ." and Ryan "may request up to four tests per calendar year, and twice in 2022." Hayek believes this to be error for three reasons: 1) Ryan's purported unsavory character, 2) the assuredly positive tests that will result given her intent to continually use marijuana and THC, and 3) Ryan's discretion over her screening.

Hayek's use of intoxicants while caring for the children, including while driving, was plainly documented in the evidentiary record, as was her strident reliance on self-determination for gauging the degree of their systemic effect. Against this evidentiary

9

backdrop, the trial court afforded Ryan the four opportunities to request urinalysis testing of Hayek. Assuming Hayek's test results are positive (which she concedes they will be), the information of their related impact on the physical or emotional endangerment of the children would be relevant to their best interests. Furthermore, we do not interpret the trial court's concern about Hayek's potential misuse of intoxicating drugs while possessing the two small children as bearing upon Ryan's character; its concern lay upon the best interest of the children. Testing is for the protection of the children, and Hayek says nothing about how those interests are not furthered by permitting someone who well knows of her drug use to request she undergo testing. Again, at least one earlier test suggested she may be prone to imbibing quantities in excessive amounts . . . that being the nail test indicating a level "61 times over the cutoff limit for the drug screen for . . . cannabinoids." It is not about her, but about the children. So, on the record at bar, we find no instance of abused discretion, especially when the edict may now be moot due to the passage of time.

Having overruled each issue, we affirm the trial court's *Final Decree of Divorce*.


Brian Quinn
Chief Justice